which is Kelley v. Honeywell. Mr. O'Leary May it please the Court, my name is Brian O'Leary and I represent Honeywell. I suggest that I think the first order of business, and I want to be sure this doesn't get lost in the shuffle, the claims of subclass B and subclass C, the claims of subclass B, the folks that retired after the expiration of the collective bargaining agreement, it's black letter law that, and the circuit court opinion, the Sixth Circuit opinion in Caterpillar, I think it's cited in the back of our opening brief, at least as to that group, if you retire after the collective bargaining agreement expires, you can't make a claim to vesting. As subject now to a preliminary injunction, the subclass B? That would be the preliminary injunction, that's correct. Would you agree to pay the benefits until this case is decided by the district court and by our court? Until a final judgment enters, absolutely. Even to subclass B? Yes. And the benefits are being paid as the litigation proceeds. Right. And you agree to do that until this case reaches finality? Certainly. Whenever that is? Yes. So that calling to our attention Caterpillar is what, icing on the cake? No, I'm saying that we are asking that this court vacate the two injunctions on the merits, but what we agreed at the suggestion of a prior panel was that we'd agree to pay the benefits until a final ruling. Okay. Okay. But by the way, the court need not reach this peculiar argument related to subclass B. There's an overarching argument, really the thrust of our briefs, that applies to both. This much is certain. We're in a Post Hackett and Reeves world. Ordinary principles of contract interpretation apply to collective bargaining agreements. That said, I think this problem is actually, despite what the briefing might suggest, relatively straightforward. You have two documents. You have the effects bargaining agreement upon which the plaintiffs rely, and we say quite simply, you can't look at that document in isolation. You've got the lifetime language in the effects bargaining agreement, and in that very same sentence is the express cross-reference to the supplemental agreement and its cancellation clause. What was the purpose of the effects agreement? Well, the parties were bargaining, basically, the close of the plant and coming to some understanding about the relationship going forward. Very common practice in that world. But I think it's important, and of course— How important is the effects agreement? It's just part of the three documents that make up the collective bargaining agreement. And they were all executed at the same time, and they all cross-reference each other, which, again, under Tackett and Reeves, you can't just read the effects bargaining agreement in isolation. So I submit, and it's not all that fancy, under— Does the effects bargaining agreement reference the other two agreements? What it says in the particular provision upon which the plaintiffs rely, it says you get these benefits for life as provided in the group insurance agreement. The group insurance and the supplemental agreement, no one disputes, is the same thing. And again, the collective bargaining agreement cross-references the supplemental agreement. It's an interlocking matrix of documents. There's some other language that's important, too, right? It's under 2B. I'm sorry, 2B? It's not unfamiliar to you, right? It's the plaintiff's principle. No, no, I'm sorry. I didn't know the numerical reference. You're looking at the for-life language. In the EA, it's on Appendix 345. It says that these insurance benefits will be for the life of the retiree or surviving spouse. That's not unfamiliar to you, right? I'm looking at it, Your Honor. Certainly, it's central to our briefs. All right. So how is that specific language overridden by language in the other two agreements? Okay, two things. Again, in the couple words prior, it says as provided in the group insurance agreement, which is the supplemental agreement with the cancellation clause. And again, incorporation by reference is the norm in sort of the production of collective bargaining agreements and that sort of thing. And I submit the parties knew well what they were saying. So the cancellation clause says once the collective bargaining agreement is over, all benefits cease. And there's no dispute that the collective bargaining agreement was terminated in June of 1997. But by the way, the Court also needs to, I think, and it's very important to look also at the effects bargaining agreement, the same document, has a durational clause of its own there in Section 19. And what it says, this thing, upon which, again, plaintiffs would have this court read in isolation. It terminates on June 6, 1997 unless renewed or extended in writing. The durational clause, Section 19 of the effects bargaining agreement. But interestingly, what that thing, or I'm sorry, provision goes on to say is that layoff benefits are carved out from the durational clause as are claims regarding matters arising out of the application of its terms prior to the expiration date. The parties knew. You have all these covenants and promises going back and forth. Then you come to Paragraph 19, the duration clause. The parties knew. The drafts in these documents, and these are sophisticated counterparties assisted by counsel. They carve two provisions out but not the retirement medical benefits. So you're contesting the injunction for subclass A as well? Yeah. And again, at the threshold, the same arguments apply to A and B. There's the added wrinkle with the ---- Well, you just said a moment ago. I'm sorry. That it terminated on June 1997. But the question is, does anybody have additional rights? I agree with you. In other words, subclass B, who then retire afterwards, they are in a lesser position, I suppose, or there's an additional argument that's important to keep in mind. But the arguments I'm making now at the highest level apply to A and B. I think it's worth taking a step back for just a moment. And I should say that there's nothing remarkable about a promise of even lifetime benefits being made subject to a condition or a temporal limitation. And I think both the Abriscato case and the Third Circuit in Unisys, which is at page 31 of our opening brief. And now you're looking at an ERISA case. ERISA is a protective remedial statute. It's different than the ordinary principles of contract law that apply to collective bargaining agreements. And it's important to say or note what the Third Circuit said in Unisys. Looking at a lifetime promise subject to a reservation of rights buried in a summary plan description, what the court of appeals said there, plans are not internally inconsistent because they contain lifetime language, but also reserve the right to terminate benefits at any time. Let me just say where I think in the 50 seconds I have, plus a little rebuttal, where I think the district court lost its way. Citing to Abriscato for a different reason, the district court said this conditional language, acknowledging sort of the efficacy of the cancellation clause in the supplemental agreement, the district court said that reserved right, that cancellation clause has to appear in the same document, meaning the effects bargain agreement. But that's a case about summary plan descriptions under ERISA, not collective bargaining agreements. And what the law requires under ERISA, its disclosure and fiduciary standards, is you want to have sort of a readily digestible document for the participants so they can understand their benefits. That's not a principle, an ordinary principle of contract law per Tackett and Reeves. And it's important, and I'll read a sentence from Tackett in this regard, one sentence and then I'll sit down. We interpret collective bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law. Even an ERISA plan, if it has foundational collective bargaining agreements, ordinary contract law applies. Talk to you soon. Good morning, Your Honors. William Wertheimer on behalf of the Stratford Hourly Retirees. I'd like to start where my opposing counsel did, that is with the language at issue, because it does not incorporate the insurance agreement and it doesn't say anything about the cancellation clause. It says, all past and future retired employees and surviving spouses shall continue to receive their full monthly pension, including supplements if any, and full medical coverage as provided in the pension plan and insurance agreement. In other words, the reference to insurance agreement is to tell you where to go to see the coverage that is referenced in the preceding phrase. It modifies that. And then it goes on to say, is now in effect or is hereafter modified by the parties for the life of the retiree or surviving spouse. That is lifetime language. What about paragraph 19, the durational paragraph? The durational paragraph is a general provision. It's a standard provision. And it does not take precedence over a specific lifetime commitment. And, in fact, every appellate case that has dealt with that issue has said that, as did Tackett, the Third Circuit, the Sixth Circuit, the Seventh Circuit, pre-Tackett, when they would give examples of what a vested benefit would be in a term-limited collective bargaining agreement. Remember, all collective bargaining agreements are term-limited. Gave examples almost identical to our language, lifetime language, in the Seventh Circuit is not negated by a general duration clause. And Tackett says that. Tackett says, in reversing the Sixth Circuit, you, Sixth Circuit, cannot put in a lifetime duration when the contract simply says that the benefits will continue based on certain suppositions you're making. If the duration clause was effective to negate the lifetime language, Tackett would have reversed. It did not, because a cancellation clause, a general cancellation clause or a termination clause, whichever you want to call it, and here they refer to each, does not serve to negate a specific promise. The Third Circuit in Skinner said, you need lifetime language in order to get a lifetime benefit. But that was a case where there was a termination clause. In other words, there are always termination clauses. Do the subclass B folks also get the benefit of this language? Certainly. The lifetime language does apply to subclass B. And there, let me go back to a point counsel made. There is not black-letter law that you have to retire during the contract term that applies here because in the cases he talks about, or the one particular case out of the Sixth Circuit, there was no language future. There was no word future. That was added to this contract by the parties in order to make clear that eligibility would continue into the future. There is no other case with language like that. What do you mean by that? After the expiration of this collective bargaining agreement, right? That's right. That's exactly what I mean. Let me also go back to the insurance, the cancellation provision, because it doesn't even apply to retirees. If you go to the insurance agreement, the Article 20 general provisions, Section 17, and you go through Section 17, you see it applies to employees, not retirees. And in 1997, when they were threatening to terminate health benefits, and we have this in the record and it's in the NLRB case, Honeywell, or at the time Allied, sent a notice out to employees only under Section 17. So that section doesn't even apply to retirees. But the primary point is that under ordinary principles of contract law, a specific provision like for the life of, like future, takes precedence over a general duration clause. A specific provision like for the life of or future takes precedence over a standard provision that's been in contracts forever, like the cancellation clause. In other words, what they are arguing is that in 1994, in the context of a potential closing, where obviously, why does the union put in for the life of at that point? To make clear that these benefits are lifetime. Can I ask you how many people are in the two classes, generally, in some round numbers? The subclass A is about 60% of the number, and I'm trying to remember the total number, about 800 or 900? 260, I mean 240 or 160. Oh, my numbers are off, I'm sorry. 260 in subclass A, 140 approximately in subclass B. Thank you. Let me also... It doesn't include spouses, of course. Those are just the retirees. I believe that's correct. Although this benefit is for the life of dependent spouses as well, isn't it? That's right. Let me also point out that there is abundant extrinsic evidence that the district court didn't even talk about relative to for the life of, because that term is so clear, supporting the notion that the parties meant to say for the life of when they said for the life of, that it was an attempt to make clear to the retirees that their benefits were lifetime, not bound by the three-year term of the collective bargaining agreement. And there's also abundant extrinsic evidence that the term future means exactly what we say it means. And, in fact, we had a half-day evidentiary hearing at which we had the two bargainers from 1997 or, I'm sorry, 1994, testify to how the word future got put in the contract and it was put in in the context in order to make it clear that the termination clause would not limit people's ability to retire even after the contract expired. That's why they put the term future in. That was unrebutted. They offered no evidence on that. So subclass A people have a permanent injunction. Is that correct? Correct. So there's never been a trial on whether there was ambiguity or any issues of fact. There has not. The judge found that the lifetime language was clear and granted us summary judgment and a permanent injunction. No ambiguity there, right? That's correct. That's the decision. That's correct. Subclass B, it's a temporary injunction because she believed that there was ambiguity and there has to be a trial? Yes. She found that there was one piece of evidence from 1994 in which a union bargainer, extrinsic evidence. First of all, she found that the term future was ambiguous. We disagree with that, but that's what she found. We think she could have found that it was clear that it meant what we say it means. She found that it was ambiguous, and she also found that there was one piece of evidence in all of the evidence that we offered at the evidentiary hearing that would support a finding that the term future did not mean what we said it meant. Therefore, she set it for trial. But she didn't find the same with subclass A? She did not. She knew what future meant in subclass A? No, no. Well, the word future has no relevance as to subclass A because subclass A, they are people who retired under the contract. They don't need future to . . . They don't need future to win their case. And just finally, and I know the court was asking questions relative to this early on, our position is, and we have a motion to dismiss, that the preliminary injunction issue is moot. They have agreed to keep the benefits in effect until the case is over, so there is no case or controversy relative to a preliminary injunction. We have their agreement on the record that this court confirmed in its order saying that the benefits will be continued, so that there is no reason for this court to decide anything relative to subclass B or this future issue if it finds, as we believe it should, that the district court was correct in deciding that for the life of the retiree is clear and unambiguous and that these are vested benefits. Then we have a trial on the issue of whether subclass B is entitled to those vested benefits. Thank you. I have a question about the NLRB proceedings and its relevance here. What are we to make of that exactly? Allied and Honeywell essentially . . . There was a phrase long ago, a runaway corporation. They're trying to get out of Connecticut as quickly as possible. They were moving to Phoenix. All the work to a non-union facility in Phoenix, Arizona. Yes. And what did the NLRB hold and why would it be relevant here? The NLRB held that the severance benefits were payable because Allied had violated its duty to bargain in good faith when it failed to bargain to impasse over the severance pay issue after the contract expired. Their argument as to severance pay was that the severance pay terminated with the contract. The union's argument there was it may have terminated with the contract, but you didn't bargain to impasse, and both the NLRB and the D.C. Circuit held in the union's favor as to that. There is much background evidence in that case, which I think would be helpful for this Court in terms of the context in which these benefits were bargained, and makes almost nonsensical the notion that when you look at it in context, that what they were trying to do for the life of was provide a benefit that would be for the life of as long as it was during the contract term, which is why they make no reference to any of those outside facts, what was really going on. Thank you. First up, the motion to quash, and very briefly, as we point out in response to that motion, the case that the plaintiffs rely on, New York City Retirement, page 1 of their brief, basically says if the coercive nature of the injunction is still in place, then the controversy is not moot, and the Court — But you have agreed to pay the benefits. But we are still challenging. We are here today on the merits. In other words, there is a future element of that, and any other reading of the law — Do you need the appeal of the preliminary injunction to go forward to challenge the — Well, we are appealing. We took interlocutory appeals of both the permanent and temporary injunctions. A prior panel of this Court asked me would Honeywell be willing to continue the benefits in place until this is resolved on the merits. Not surprisingly, we said yes, but I think that panel would be surprised to think that they tricked me and, by extension, Honeywell, into divesting this court of jurisdiction. That was not the intent, and again, this Court's circuit — the circuit authority is clear and clearly favor us. Honeywell doesn't have to put itself in contempt to be able to appeal these things. Very quickly, the NLRB proceedings that Plaintiffs' Counsel speaks of, it's apples and oranges. Those are mandatory subjects of bargaining. This is a very different world, retirement and health care. Now, I'll just say in the 30 seconds left — Let me just ask you about that. Sure. Because we've got the appeal of a temporary injunction, isn't one of the elements whether there is a substantial question going to the merits of the case? I forget the particular language of that element. But if that's the case . . . It's on the merits or something like that? Yeah, but it's not a preponderance of the evidence or clear and convincing evidence or something like that. It's a lesser standard of proof. So why would we deal with that if you have an agreement to continue those benefits? Well, again, Your Honor, were it otherwise, we could never take the appeal of the preliminary injunction unless I think we put ourselves at risk of contempt, which I don't think the law would require that. And again, this was done at the invitation of your colleagues. It's merely an invitation. It's not a demand. Fair enough, Your Honor. But I think that it was not the intent, again, to sort of quash jurisdiction at this point in time. The case law says, is this issue moot? And meaning, is any aspect of the injunction sort of burdening now and in the future to Honeywell? We're still there. And again, that's why we're here. And this Court's case law says precisely that, that this Court has jurisdiction. Very, very briefly, counsel spoke at length, A, about general durational clauses. This is not sort of your typical general durational clause. Most of them, you've got the covenants in the document or the agreement, and then you've got a general carve-out. This thing ends as of date X. So what counsel suggests is you've got the lifetime language, and we're focusing on the effects-bargaining agreement, and at the very end you have this durational provision. He says a general durational clause cannot trump the promise of a lifetime benefit. It's not a general durational clause. As I point out, the draftsman, skilled negotiators, assisted by counsel, only carved out two categories from that durational clause. So it misses the point or something worse to say that this is just a general durational clause. And just one comment about extrinsic evidence. Tackett and Reeves, the Supreme Court- If it's so terribly clear, why are we here? Your Honor, I think- These skilled negotiators. Well, that was the point with my reference to Abbruscato and Unisys. You've got lifetime language subject to a temporal limitation analogous to a reservation of rights in an ERISA plan. That's enforceable. The district court did two things to avoid it. They cited to this Court's opinion in Abbruscato and said everything has to be in the same document, acknowledging, by the way, perhaps the efficacy of the cancellation clause in the companion supplemental agreement. Lastly, in footnote 5 of the opinion, she then called the cancellation clause, and finally there's an implicit recognition that you've got to deal with the cancellation clause. She says that's a general durational clause that doesn't apply to retirees. I'll end on this note. If you look at the balance of the supplemental agreement, and the examples are innumerable, the drafts people knew and used specifically the words employees here, the word retirees there throughout the document. Then you go down to the cancellation clause, there's no such distinction. The distinction that the district court found, nevertheless, is entirely untenable. That language, and that's how the court tried to sidestep the application of the supplemental agreement. At two levels, as I just noted, the district court is acknowledging the efficacy of the supplemental agreement but trying to avoid it. And thank you for your time. Thank you. We'll reserve the decision.